UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| TIMOTHY ANDERSON AND, | ) | |
| AMANDA ANDERSON | ) | |
| | ) | |
| PLAINTIFFS | ) | |
| | ) | CV: 08-640 |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| BAYSIDE RECOVERY SERVICE, INC. | ) | |
| | ) | |
| DEFENDANT. | ) | |

## COMPLAINT

This is an action brought by the Plaintiffs, Timothy Anderson and Amanda Anderson, for actual and statutory damages, attorney's fees, and costs for Defendant's violations of the Fair Debt Collections Practices Act. Plaintiffs also seek compensatory and punitive damages for the Defendant's violations of Alabama's common laws set forth herein.

### JURISDICTION AND VENUE

This Court has jurisdiction under 15 U.S.C. §1692k (d), and 28 U.S.C. §1331, §1332, and §1367. Venue is proper in that the Defendant transacted business here, and the Plaintiffs reside here.

### PARTIES

1.   Plaintiff Timothy Anderson is a resident and citizen of the state of Alabama, Baldwin County, and is over the age of twenty-one (21) years.

2.   Plaintiff Amanda Anderson is a resident and citizen of the state of Alabama, Baldwin County, and is over the age of twenty-one (21) years.

3. The Defendant, Bayside Recovery Services, Inc. ("Bayside" or "Defendant") is an Alabama corporation with its principal place of business in the state of Alabama. The Defendant is engaged in the business of collecting consumer debts from consumers residing in Baldwin County, Alabama and is a "debt collector," as defined by the FDCPA 15 U.S.C. §1692a(6).

### *Background of Alleged Debt*

4. Plaintiffs Timothy and Amanda Anderson lived in Park Place Apartments in Foley, Alabama from June 21, 2008 – September 30, 2008. Plaintiffs decided to move because a number of violent incidents had occurred in the area, and the Plaintiffs feared for the safety of their two small children.

5. Plaintiffs chose to leave the apartment at the end of September 2008 (before their lease expired), and understood that they could be responsible for some future rent payments and/or penalties based on their lease agreement.

6. The Plaintiffs agreed with the apartment manager on a "balance" consisting of a termination fee and some back-concessions. The Plaintiffs and the apartment manager agreed that Plaintiffs could make payments on the "balance" beginning in October, 2008.

7. Amanda Anderson called the apartment manager on October 6, 2008 in order to make a payment, but was told that the account had been turned over to collections. The apartment manager did not know who the collection agency was but that Ms. Anderson needed to wait for their call.

### *Collection call to Timothy Anderson*

8. On October 8, 2008, an agent/employee of the Defendant called Plaintiff Timothy Anderson on his cell phone.

9. The agent/employee did not disclose that he was "attempting to collect a debt and that any information obtained will be used for that purpose."

10. The agent/employee was extremely rude, and every time Mr. Anderson attempted to explain his situation, the agent/employee cut him off by talking loudly over him and threatening to "take him to court."

11. The agent/employee told Mr. Anderson that "if we can't do something right now" he would use the legal system. The agent/employee also told Mr. Anderson that he would garnish his wages.

12. The agent/employee became so belligerent on the call that Mr. Anderson had no choice but to end the call by hanging up the phone.

### *Collection call to Amanda Anderson*

13. After the phone call to Mr. Anderson, the same agent/employee called Amanda Anderson and was very rude and belligerent to her as well.

14. Again, the agent/employee did not disclose that he was "attempting to collect a debt and that any information obtained will be used for that purpose."

15. The agent/employee threatened the Plaintiffs by stating "tell your husband that if he ever terminates a call from me again, I will not work with you, I will just sue you!"

16. Again, the agent/employee pushed Ms. Anderson to "do something" about the alleged debt right then.

17. Ms. Anderson told the agent/employee that she would not commit to anything until she had spoken with her attorney.

18. Notably, the Plaintiffs received a letter from the Defendant on October 11, 2008, which contained the 30-day right to dispute the debt. This confused the Plaintiffs because the

agent/employee had not notified them of their rights, but only demanded immediate action, coupled with threats of legal action.

### *Phone call to Plaintiff's Aunt*

19.     Later that same day, the same agent/employee called Ms. Donna Glass, the aunt of Amanda Anderson.

20.     The agent/employee was very rude and belligerent on this call as well.

21.     The agent/employee told Ms. Glass that he was "trying to locate" the Plaintiffs and asked if she knew where they lived.

22.     Ms. Glass told the agent that she did not know where they were living at the time. The agent /employee asked Ms. Glass if she ever saw the Plaintiffs and she replied "from time to time." The agent/employee then became very obnoxious to Ms. Glass stating "you mean you see them from time to time but you don't know where they live?!?!"

23.     The agent/employee had no reason to contact Ms. Glass because he already had contact information for the Plaintiffs, but did so only to embarrass, harass, and humiliate the Plaintiffs in an attempt to collect the alleged debt.

### *Phone call to Plaintiff's Brother*

24.     A few days later, the same agent/employee called the home of Amanda Anderson's parents, and the phone was answered by her brother, Joshua Brady.

25.     The agent/employee told Mr. Brady that he was trying to find Amanda Anderson. Mr. Brady asked what this was in regards to, at which point, the agent/employee became very rude and relied "this is in regards to an important personal business matter".

26. The agent/employee asked "do you know how to get in touch with her?" to which Mr. Brady relied "yes" and the agent/employee asked "can you have her call me" and gave a call back number.

27. The agent/employee had no reason to contact Mr. Brady, or any other third parties, because he already had contact information for the Plaintiffs, but did so only to embarrass, harass, and humiliate the Plaintiffs in an attempt to collect the alleged debt.

## COUNT ONE
## FAIR DEBT COLLECTION PRACTICES ACT

28. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

29. The Defendant has engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Plaintiffs' alleged consumer debt.

30. The Defendant used false representations and/or deceptive means to attempt to collect a debt in violation of §§1692e(3), (4), (5), (10) and (11).

31. The Defendant violated § 1692c(b) by communicating with third parties in connection with the collection of an alleged debt with no permissible purpose.

32. The Defendant violated §1692f by using unfair and/or unconscionable means to attempt to collect a debt.

33. The Defendant violated §1692d by using harassment and abusive means in attempting to collect a debt.

34. As a proximate result of the Defendant's actions, the Plaintiffs were caused to suffer damages.

## COUNT THREE
## NEGLIGENT TRAINING AND SUPERVISION

35. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

36. The Defendant knew or should have known the status of the alleged debt and of the conduct set forth herein which was directed at and visited upon the Plaintiffs.

37. The Defendant knew or should have known that said conduct was improper.

38. The Defendant negligently failed to train and supervise collectors in order to prevent said improper conduct.

39. The Defendant negligently failed to train and supervise collectors on the FDCPA as it relates to communications with consumers and third parties.

40. As a result of the Defendant's negligence, the Plaintiffs were caused to suffer damages.

## COUNT FOUR
## RECKLESS AND WANTON TRAINING AND SUPERVISION

41. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

42. The Defendant knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiffs.

43. The Defendant knew or should have known that the said conduct was improper and illegal.

44. The Defendant recklessly and wantonly failed to train and supervise collectors in order to prevent said improper illegal conduct.

45. The Defendant recklessly and wantonly failed to train and supervise collectors on the FDCPA as it relates to communications with consumers and third parties.

46. As a result of the Defendant's recklessness and wantonness, the Plaintiff was caused to suffer damages.

## COUNT FOUR
## INVASION OF PRIVACY

47. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

48. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the FDCPA, when it stated as part of its findings:

> Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, **and to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

49. The Defendant undertook and/or directed communications to the Plaintiffs constituting an invasion of privacy, as set out and described in the common law of the State of Alabama.  Said communications were made in disregard for Plaintiffs' right to privacy.  Said communications were made to force, coerce, harass, embarrass and/or humiliate the Plaintiffs into paying a debt.

50. Said invasions were intentional, willful, and malicious, and violated the Plaintiffs' privacy.  The Plaintiffs aver that the communications were made by individuals who were the employees of and/or acting on behalf of Defendant.

51. Said communications constitute the wrongful intrusion into their solitude and seclusion.

52. As a proximate consequence of said invasion of the right of privacy, the Defendant has caused the Plaintiffs to suffer embarrassment, worry, humiliation, anxiety, nervousness, and mental anguish.

## AMOUNT OF DAMAGES DEMANDED

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand a judgment against the Defendant as follows:

A. Declaratory judgment that the Defendant's conduct violated the FDCPA;

B. Statutory damages of $1,000, actual damages, and costs and reasonable attorney fees from the Defendant for the violations of the FDCPA (15 U.S.C.§1692k);

C. Compensatory and punitive damages against Defendant on Plaintiffs' state law claims for damages due to the Negligent Training and Supervision, Reckless and Wanton Training and Supervision, and Invasion of Privacy and,

D. Such other relief that this Court deems just and proper.

/s/ Michael W. Lindsey
Michael W. Lindsey
ASB 4328-A63L
Lindsey Law Firm, LLC
One Perimeter Park Dr., Ste 330 N
Birmingham, AL 35243
Phone: (205) 970-2233

**PLAINTIFF REQUESTS THAT DEFENDANT BE SERVED A COPY OF THIS COMPLAINT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED TO THE FOLLOWING ADDRESS:**

BAYSIDE RECOVERY SERVICE, INC.
c/o Barry Baurle – Reg. Agent
26148 Capital Dr, Ste K
Daphne, Al 36526